IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| MARY REYES, | § | |
| | § | |
| Plaintiff, | § | CIVIL ACTION NO. 4:21-CV-00639-SDJ-AGD |
| v. | § | |
| | § | |
| EQUIFAX INFORMATION SERVICES, LLC, ET AL., | § | |
| | § | |
| Defendants. | § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Pending before the court is Defendant Equifax Information Services, LLC's Motion for Summary Judgment and Memorandum in Support (Dkt. #55). Having considered Equifax's Motion, Reyes' Response (Dkt. #61), Equifax's Reply (Dkt. #70), Reyes' Notice of Recent Decisions Relevant to Pending Motion for Summary Judgement (Dkt. #80), Equifax's Response to Reyes' Notice, and all other relevant filings, the court recommends the Motion for Summary Judgment (Dkt. #55) be **GRANTED**.

**BACKGROUND**

*The Fair Credit Reporting Act - Procedure*

Plaintiff Mary Reyes filed suit against three defendants asserting Fair Credit Reporting Act ("FCRA") violations arising out of allegedly fraudulent charges on Reyes' Citibank credit card (Dkt. #1 at 13).[1] Citibank is a data furnisher, meaning that it reports credit information to consumer reporting agencies like Equifax (Dkt. #55 at 8). If a customer disputes information reported by the credit reporting agency, the agency, pursuant to the FCRA, conducts a

---

[1] Reyes originally sued Equifax, Experian Information Solutions, Inc., and Trans Union, LLC. On May 20, 2022, the Parties attended a settlement conference. Reyes resolved all issues with Experian and Trans Union, but not Equifax.

reinvestigation "and either verifies, updates, or removes the disputed information." (Dkt. #55 at 8). If needed, the credit reporting agency notifies the data furnisher who provided the information, who then conducts its own investigation and reports back to the credit reporting agency (Dkt. #55 at 10).

*Factual Background*

Reyes contends that, in August 2019, over $2,000 was fraudulently charged to her Citibank credit card ending in 6100 after that card was "skimmed" (Dkt. #55, Exhibit B at 7–8). In August 2019, Citibank issued Reyes a new card with a new number ending in 5291 (Dkt. #55, Exhibit B at 4). On September 25, 2019, Reyes sent Citibank a letter indicating that certain charges were fraudulent (Dkt. #55, Exhibit E at 3–4). On June 18, 2020, Citibank responded to Reyes by letter, stating:

> We respectfully decline your request to issue credit for the $2,535.72 in fraud charges billed on your prior account ending in 6100 that you identified as unauthorized. Our records reflect the transactions were processed using the embedded chip, which cannot be duplicated. Because valid purchases were made before the disputed charges using the same Chip card, which you confirmed was in your possession, we consider the transactions to be a valid portion of your account balance.

(Dkt. #55, Exhibit C at 1). On March 11, 2022, Reyes received another letter from Citibank with the same language as the June 2020 letter (Dkt. #55, Exhibit D at 1).

Reyes was also corresponding with Equifax during this time. On April 15, 2020, Reyes' attorney, James Foley, mailed Equifax a written dispute based on the charges (Dkt. #55, Exhibit E at 1–2). Specifically, Reyes disputed charges on her Mastercard account ending in 6100, "with an approximate balance of $3122." (Dkt. #55, Exhibit E at 1). Reyes was aware that her account number no longer ended in 6100 (Dkt. #55, Exhibit F at 2). Equifax responded on April 29, 2020, explaining that Citi Advantage Mastercard account ending in 6100 was not reporting on

her Equifax credit file (Dkt. #55, Exhibit G at 4). Foley sent letters to Equifax again disputing the 6100 account on July 6, 2020 and October 5, 2020 (Dkt. #55, Exhibits H, J). Equifax responded to the letters, each time explaining that account number 6100 was not reporting on Reyes' Equifax credit file (Dkts. #55, Exhibit I; #61, Exhibit 12-1).

On May 1, 2020, Equifax received a fraud referral from Experian, another credit reporting agency, regarding Reyes' account ending in 5291 (Dkt. #55, Exhibit K). Accordingly, on May 2, 2020, Equifax forwarded the dispute to Citibank and requested that it investigate the fraud allegation (Dkt. #55 at 15; Exhibit K). Citibank responded to Equifax, concluding that the information was accurate (Dkt. #55, Exhibit K). On July 18, 2020, Equifax received another fraud referral from Experian regarding account number 5291 (Dkt. #55, Exhibit L). Equifax repeated its process, and Citibank again confirmed that the disputed information was accurate (Dkt. #55, Exhibit L).

Reyes also contacted Equifax through its chat service. On August 28, 2019, after disputing the charges over chat, a Citibank representative advised Reyes to "remove the amount of the fraudulent charges" from her payment and "make the payment for the remaining [balance]." (Dkt. #55, Exhibit H at 6). However, when Reyes chatted with Equifax on September 10, 2019, the representative advised her that "[t]here may be a fee charged if you don't make the payment in full. I suggest that you make the whole payment and when it gets resolved, we will provide you with the credit for the payment." (Dkt. #55, Exhibit H at 8). After October 2019, Reyes did not pay Citibank the minimum payment due on the account, maintaining her position that the charges were fraudulent (Dkt. #55, Exhibit B at 12).

In August 2020, Reyes applied for a home loan with Educational Employees Credit Union ("Educational Employees") (Dkt. #55, Exhibit M at 3). That same month, Educational

Employees sent Reyes a Statement of Credit Denial, Termination, or Change (Dkt. #55, Exhibit M at 4). Educational Employees' reason for denial was "delinquent credit obligations" and that it was "unable to verify income." (Dkt. #55, Exhibit M at 4).

As a result, Reyes filed suit against credit reporting agencies Equifax, Trans Union, and Experian on August 12, 2021 (Dkt. #1 at 1). The Court subsequently dismissed the claims against defendants Experian (Dkt. #50) and Trans Union (Dkt. #47); only Equifax remains.

*Plaintiff's Claims – the Live Pleading*

Reyes asserts three FCRA violations under 15 U.S.C. § 1681, alleging that Equifax (1) failed to conduct a good faith investigation into Reyes' dispute under 15 U.S.C. §1681i(a)(1)(A), (2) failed to use reasonable procedures to assure accuracy under 15 U.S.C. §1681e(b), and (3) failed to consider all relevant information submitted by Reyes under 15 U.S.C. §1681i(a)(4) (Dkt. #1 at 13–15). Reyes further alleges that Equifax's FCRA violations were either negligent or willful (Dkt. #1 at 9). For relief, Reyes seeks actual, statutory and punitive damages pursuant to § 1681, costs and attorney's fees, and all other relief to which she may be entitled (Dkt. #1 at 19–20).

*Motion for Summary Judgment*

On November 4, 2022, Equifax filed the instant Motion for Summary Judgment (Dkt. #55). On December 9, 2022, Reyes filed her response (Dkt. #61), and on December 23, 2022, Equifax filed its reply (Dkt. #70). On August 25, 2023, Reyes filed a Notice of Recent Decisions Relevant to Pending Motion for Summary Judgment (Dkt. #80), and on August 29, 2023, Defendant filed its response (Dkt. #81).

## SUMMARY JUDGMENT STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses to help "secure the just, speedy and inexpensive determination of every action." *Nat'l Cas. Co. v. Kiva Const. & Eng'g, Inc.*, 496 F. App'x 446, 449 (5th Cir. 2012) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986)). Summary judgment is proper if the pleadings, discovery, and disclosure materials on file, and any affidavits show "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A genuine dispute of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Certain Underwriters at Lloyd's, London v. Axon Pressure Prods. Inc.*, 951 F.3d 248, 255 (5th Cir. 2020) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "The substantive law will identify which facts are material. This means only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Gibson v. Collier*, 920 F.3d 212, 219 (5th Cir. 2019) (citing *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 378 (5th Cir. 2019)) (cleaned up).

The party moving for summary judgment has the burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. FED. R. CIV. PRO. 56(a); *Certain Underwriters at Lloyd's*, 951 F.3d at 255. When the movant does not bear the burden of proof at trial, the movant is entitled to summary judgment if "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Gonzales v. ConocoPhillips Co.*, 806 F. App'x 289, 291 (5th Cir. 2020) (citing *Celotex*, 477 U.S. at 323). Once the movant has carried its burden, the nonmovant "must go beyond the pleadings and identify specific evidence in the record showing that there is a

genuine issue for trial." *Powers v. Northside Indep. Sch. Dist.*, 951 F.3d 298, 307 (5th Cir. 2020). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Malbrough v. Stelly*, 814 F. App'x 798, 802 (5th Cir. 2020) (citing *Anderson*, 477 U.S. at 249-50). The court need only consider the record materials cited by the parties. FED. R. CIV. P. 56(c)(3). "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (quotations omitted).

## SUMMARY JUDGMENT EVIDENCE

### *Equifax Information Services, LLC*

Equifax submits the following evidence in support of its Motion for Summary Judgment:

| | |
|---|---|
| Exhibit A (Dkt. #55, Exhibit A): | Declaration of Celestina Gobin in Support of Defendant Equifax Information Services LLC's Motion for Summary Judgment |
| Exhibit B (Dkt. #55, Exhibit B): | Deposition of Mary Reyes |
| Exhibit C (Dkt. #55, Exhibit C): | Letter from Citibank to Reyes, June 18, 2020 |
| Exhibit D (Dkt. #55, Exhibit D): | Letter from Citibank to Reyes, March 11, 2022 |
| Exhibit E (Dkt. #55, Exhibit E): | Letter from Attorney Foley to Equifax, April 15, 2020; Letter from Reyes to Citibank, Sept. 25, 2019; Fort Worth Police Report, Aug. 20, 2019; Scanned copy of Reyes' charge chart; Dallas Police Report, Sept. 24, 2019; Frisco Police Dept. Voluntary Statement by Reyes, Sept. 25, 2019; Screenshot of CFPB complaint; Identity Theft Report FTC, Sept. 21, 2019; Letter from Reyes to Equifax, Sept. 21, 2019 |
| Exhibit F (Dkt. #55, Exhibit F): | Plaintiff's Responses to Equifax's Second Requests for Admission to Plaintiff |

| | |
|---|---|
| Exhibit G (Dkt. #55, Exhibit G): | Letter from Equifax to Reyes regarding results of the dispute, April 29, 2020 |
| Exhibit H (Dkt. #55, Exhibit H): | Letter from Attorney Foley to Equifax, July 6, 2020; Transcript of live chat between Citibank and Reyes, Aug. 28, 2019, Sept. 10, 2019 |
| Exhibit I (Dkt. #55, Exhibit I): | Letter from Equifax to Reyes regarding results of the dispute, July 18, 2020 |
| Exhibit J (Dkt. #55, Exhibit J): | Letter from Attorney Foley to Equifax, October 5, 2020; Letter from Citibank to Mary, June 18, 2020 |
| Exhibit K (Dkt. #55, Exhibit K): | Equifax Automated Consumer Dispute Verification Record, May 2, 2020 |
| Exhibit L (Dkt. #55, Exhibit L): | Equifax Automated Consumer Dispute Verification Record, July 18, 2020 |
| Exhibit M (Dkt. #55, Exhibit M): | Declaration of custodian of records, Dale R. West, July 29, 2022; Notice to Reyes regarding credit score information disclosures, Aug. 27, 2020. |

*Mary Reyes*

Reyes submits the following evidence in response to the Motion for Summary Judgment:

| | |
|---|---|
| Exhibit 1 (Dkt. #61, Exhibit 1): | What to Know About Identity Theft |
| Exhibit 2 (Dkt. #61, Exhibit 2): | Celestina Gobin Deposition, May 3, 2022 |
| Exhibit 3 (Dkt. #61, Exhibit 3): | Defendant Equifax's Information Services LLC's Objections and Responses to Plaintiff's Second Set of Interrogatories |
| Exhibit 4 (Dkt. #61, Exhibit 4): | Citibank fraud alert, Aug. 18, 2019 |
| Exhibit 5 (Dkt. #61, Exhibit 5): | Letter from Reyes to Equifax, Sept. 21, 2019 |
| Exhibit 6 (Dkt. #61, Exhibit 6): | Letter from Attorney Foley to Equifax, April 15, 2020; Letter from Reyes to Citibank, Sept. 25, 2019; Fort Worth Police Report, Aug. 20, 2019; Scanned copy of Reyes' charge chart; Dallas Police Report, Sept. 24, 2019; Frisco Police Dept. |

|  |  |
|---|---|
|  | Voluntary Statement by Reyes, Sept. 25, 2019; Screenshot of CFPB complaint; Identity Theft Report FTC, Sept. 21, 2019; Letter from Reyes to Equifax, Sept. 25, 2019 |
| Exhibit 7 (Dkt. #61, Exhibit 7): | Letter from Attorney Foley to Equifax, July 6, 2020; Transcript of live chat between Citibank and Reyes, Aug. 28, 2019, Sept. 10, 2019 |
| Exhibit 8 (Dkt. #61, Exhibit 8): | Letter from Attorney Foley to Equifax, October 5, 2020; Fort Worth Police Report, Aug. 20, 2019; Scanned copy of Reyes' charge chart; Dallas Police Report, Sept. 24, 2019; Frisco Police Dept. Voluntary Statement by Reyes, Sept. 25, 2019; Screenshot of CFPB complaint; Congressional Inquiry Privacy Act Release Form, Feb. 27, 2020; Email between Reyes and Congressional Intern, March 6, 2020; Letter from Reyes to Equifax, Sept. 25, 2019; Transcript of live chat between Citibank and Reyes, Aug. 28, 2019, Sept. 10, 2019; Letter from Citibank to Reyes, June 18, 2020 |
| Exhibit 9 (Dkt. #61, Exhibit 9): | Letter from Equifax to Reyes regarding results of the dispute, April 29, 2020 |
| Exhibit 10 (Dkt. #61, Exhibit 10): | Equifax Credit File, April 29, 2020 |
| Exhibit 11 (Dkt. #61, Exhibit 11): | Letter from Equifax to Reyes regarding results of the dispute, July 18, 2020 |
| Exhibit 12 (Dkt. #61, Exhibit 12): | Automated Consumer Dispute Verification Report, Oct. 13, 2020 |
| Exhibit 12-1 (Dkt. #61, Exhibit 12-1): | Letter from Equifax to Reyes regarding results of the dispute, Oct. 21, 2020 |
| Exhibit 13 (Dkt. #61, Exhibit 13): | 2020 Credit Reporting Resource Guide |
| Exhibit 14 (Dkt. #61, Exhibit 14): | Frozen Scans |
| Exhibit 15 (Dkt. #61, Exhibit 15): | Letter from Equifax to Reyes, April 13, 2022; Equifax Credit File, April 13, 2022 |
| Exhibit 16 (Dkt. #61, Exhibit 16): | Fraud Mail Indicating Participant's Workbook (filed under seal) |

| | |
|---|---|
| Exhibit 17 (Dkt. #61, Exhibit 17): | Declaration of custodian of records, Evon Butterworth, July 22, 2022; Advantage Consumer Report, Aug. 26, 2020 |
| Exhibit 18 (Dkt. #61, Exhibit 18): | Declaration of custodian of records, Dale R. West, July 29, 2022; Notice to Reyes regarding credit score information disclosures, Aug. 27, 2020 |
| Exhibit 19 (Dkt. #61, Exhibit 19): | Declaration of Mary Reyes, Dec. 9, 2022 |
| Exhibit 19-1 (Dkt. #61, Exhibit 19-1): | Reyes' Interrogatory Reponses |
| Exhibit 20 (Dkt. #61, Exhibit 20): | Declaration of Juan Reyes, Dec. 8, 2022. |

***Objection to Summary Judgment Evidence***

In her Response, Reyes argues that the letters from Citibank to Reyes dated June 2020 and March 2022 (the "Citibank Letters") are inadmissible hearsay if Equifax offers them to prove "that Mary made the credit card charges at issue." (Dkt. #61 at 19). Hearsay is an out of court statement offered into evidence to prove the truth of the matter asserted in the statement. FED. R. EVID. 801(c). Here, the Citibank Letters state that Citibank declined to issue credit for Reyes' account because Citibank "consider[ed] the transactions to be a valid portion of [her] account balance." (Dkt. #55, Exhibits C–D). In its motion, Equifax appears to be offering the Citibank Letters to demonstrate that the information it received from Citibank was accurate (Dkt. #55 at 16). Indeed, Equifax points out that Reyes "has failed to produce any evidence to suggest that. . .Citibank no longer considers the balance to be valid." (Dkt. #55 at 16). Thus, Equifax does not appear to offer the Citibank Letters to prove that Reyes was responsible for the charges on her card. Because Equifax does not offer the Citibank Letters for the truth of the matter asserted by Citibank, the Citibank Letters are not hearsay. Even if the Citibank Letters were hearsay, Reyes waived her hearsay objection by including the June 2020 letter in her response

(Dkt. #61, Exhibit 8). *See Ohler v. U.S.*, 529 U.S. 753, 755 (2000) ("If a party who has objected to evidence of a certain fact himself produces evidence from his own witness of the same fact, he has waived his objection") (citation omitted). As such, the court will consider the Citibank Letters as summary judgment evidence.

## ANALYSIS

The court recommends granting Equifax's Motion for Summary Judgment because there is no genuine issue of material fact as to whether the information transmitted from Citibank to Equifax was inaccurate.

The Fair Credit Reporting Act's ("FCRA") purpose is "to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681(a). Reyes brings claims under two sections of the FCRA, §§ 1681e(b) and 1681i (Dkt. #1 at 13-15). Section 1681e(b) requires that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). Section 1681i governs the procedure for when the parties dispute an inaccuracy in the reported information. 15 U.S.C. § 1681i.

As a threshold matter, a plaintiff asserting FCRA claims must demonstrate that the credit entry was inaccurate. *Washington v. CSC Credit Servs. Inc.*, 199 F.3d 263, 267 n.3 (5th Cir. 2000) ("Courts applying § 1681e(b) uniformly limit recovery to cases where the failure to follow procedures causes actual harm (*i.e.,* release of an inaccurate report) to the consumer.") (citations omitted); *Spence v. TRW, Inc.,* 92 F.3d 380, 382 (6th Cir.1996) ("[a] showing of inaccuracy is an essential element of a claim under the Fair Credit Reporting Act"); *Guimond v. Trans Union Credit Info. Co.,* 45 F.3d 1329, 1333 (9th Cir. 1995) ("In order to make out a prima facie

violation under § 1681e(b), a consumer must present evidence tending to show that a credit reporting agency prepared a report containing inaccurate information."). A credit entry may be inaccurate either "because it is patently incorrect, or because it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Sepulvado v. CSC Credit Servs., Inc.*, 158 F.3d 890, 895 (5th Cir. 1998).

Here, the evidence establishes that the Citibank information Equifax reported was accurate. After Reyes notified Citibank of the allegedly fraudulent charges, Citibank responded in June 2020 and March 2022, informing Reyes that "[b]ecause valid purchases were made before the disputed charges using the same Chip card, which you confirmed was in your possession, we consider the transactions to be a valid portion of your account balance." (Dkt. #55, Exhibits C–D). Thus, Citibank's position is that the charges are valid (Dkt. #55, Exhibits C–D). Moreover, Citibank twice verified the accuracy of the credit entry (Dkt. #55, Exhibits K–L). Thus, the information Equifax reported was not patently incorrect or misleading; its report reflected the delinquent balance on Reyes' Citibank card which Citibank determined was not fraudulent (Dkt. #55, Exhibits C–D, K–L). Accordingly, there is no genuine issue of material fact as to whether the Citibank information reported by Equifax was inaccurate.

Because inaccuracy is a threshold showing for a FCRA claim, the court need not address the remaining issues before it. *See Washington*, 199 F.3d at 266 (explaining that the "'reasonable procedures' requirement [is] a limit on liability that might otherwise attach for inaccurate reports, rather than as an affirmative basis for a claim"). However, even if there was a fact question as to whether Citibank reported accurate information to Equifax, that question is the subject of a legal dispute between Reyes and Citibank. As such, Reyes' FCRA claim amounts to an impermissible collateral attack on the validity of Reyes' debt with Citibank.

Generally, the validity of a debt is a legal dispute, resolvable only in a court of law. *See DeAndre v. Trans Union LLC*, 523 F.3d 61, 68 (1st Cir. 2008); *Saunders v. Branch Banking and Trust Co. of VA*, 526 F.3d 142, 150 (4th Cir. 2008); *Carvalho v. Equifax Information Servs., LLC*, 629 F.3d 876, 891 (9th Cir. 2010). "The paradigmatic example of a legal dispute is when a consumer argues that although his debt exists and is reported in the right amount, it is invalid due to a violation of law." *Chuluunbat v. Experian Info. Solutions, Inc.*, 4 F.4th 562, 567 (7th Cir. 2021). As such, "courts have been loath to allow consumers to mount collateral attacks on the legal validity of their debts in the guise of FCRA reinvestigation claims." *Carvalho*, 629 F.3d at 891. Here, Reyes does not deny that there is outstanding debt on her Citibank account; she disputes whether that debt is valid (Dkt. #55, Exhibits C–D, K–L). Reyes' dispute, at its core, is a legal dispute with Citibank. Therefore, even if Reyes could demonstrate that Equifax's report was inaccurate, her dispute is legal in nature and thus not cognizable against Equifax under the FCRA.

The cases included in Reyes' Notice of Recent Caselaw (Dkt. #80) are unpersuasive, both due to their distinguishable fact patterns and because the Notice was devoid of any analysis of the included cases. In *Sessa*, the plaintiff leased a vehicle with the option of purchasing the vehicle for its residual value at the end of the lease. *Sessa v. Trans Union, LLC*, 74 F.4th 38, 40–41 (2d Cir. 2023). However, the creditor incorrectly reported the balloon payment to Trans Union as a debt. *Id.* at 41. After the plaintiff filed suit under the FCRA, the district court granted summary judgment for Trans Union because it "'cannot be held liable when the accuracy at issue requires a legal determination as to the validity of the debt the agency reported[.]'" On appeal, the Second Circuit held that "allegedly inaccurate information reported on a consumer's credit

REPORT AND RECOMMENDATION – Page 12

report must be objectively and readily verifiable to be actionable under section 1681e(b)." *Id.* at 43.

Here, unlike in *Sessa*, the disputed debt is not "objectively and readily verifiable." Reyes concedes that she did not pay the amounts due to Citibank because she believed that the charges were fraudulent (Dkt. #55, Exhibit B at 12). However, because Reyes' chipcard could not be duplicated, Citibank considered the charges a "valid portion of [Reyes'] account balance." (Dkt. #55, Exhibit C at 1). Therefore, because there is a live legal dispute between Reyes and Citibank over whether Reyes is responsible for the outstanding balance, that balance is not "objectively and readily verifiable." Accordingly, even if the Citibank information was inaccurate, Reyes' dispute is not actionable under the FCRA.

The second case in Reyes' Notice, *Chaitoff*, is also distinguishable. There, the plaintiff and his lender entered a Trial Period Plan ("TTP"), which allowed the plaintiff to make lower payments and avoid foreclosure. *Chaitoff v. Experian Info. Sols., Inc.*, No. 21-2632, 2023 WL 5200125, at *2 (7th Cir. Aug. 14, 2023). After the plaintiff was denied a home loan, he requested his Experian report, which never mentioned the TTP. *Id.* The district court held "that there was nothing inaccurate about Experian's report because Chaitoff's dispute was with how Ocwen had reported the TPP," which was a legal, not factual dispute. *Id.* at *4. Reversing the district court, the Seventh Circuit held that the existence or nonexistence of the TTP was a fact question, not a legal question because it did not require Experian to apply the law to the facts. *Id.* at *7. The court explained that "[w]hile there may be a separate legal dispute about whether the debtor in fact entered into a TPP with his furnisher, that is not this case." *Id.* It is, however, the instant case. Reyes and Citibank dispute the validity of the outstanding Citibank balance, creating a live

legal dispute that Equifax is not required to resolve. Based on the foregoing, summary judgment is appropriate in this case.

## CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the court recommends that Equifax's Motion for Summary Judgment and Memorandum in Support (Dkt. #55) be **GRANTED** and Reyes' claims be **DISMISSED WITH PREJUDICE**.

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

SIGNED this 14th day of September, 2023.

_____
AILEEN GOLDMAN DURRETT
UNITED STATES MAGISTRATE JUDGE