UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| MARY REYES | § |
| | § |
| v. | §   CIVIL NO. 4:21-CV-639-SDJ |
| | § |
| EQUIFAX INFORMATION | § |
| SERVICES, LLC, ET AL. | § |

**<u>MEMORANDUM ADOPTING REPORT AND RECOMMENDATION OF
UNITED STATES MAGISTRATE JUDGE</u>**

Came on for consideration the Report and Recommendation of the United States Magistrate Judge ("Report"), this matter having been referred to the Magistrate Judge pursuant to 28 U.S.C. § 636. The Report, (Dkt. #82), includes proposed findings of fact and a recommendation that Equifax's Motion for Summary Judgment, (Dkt. #55), be granted and that Plaintiff's claims be dismissed with prejudice. Plaintiff timely filed an objection to the Report. (Dkt. #84). Defendant filed a response to the objection. (Dkt. #85). The Court, having reviewed the Report, Plaintiff's objection, and Defendant's response, and having conducted a de novo review, determines that the Report should be adopted.

**I.**

A district court reviews the findings and conclusions of a magistrate judge de novo only if a party objects within fourteen days of the report and recommendation. 28 U.S.C. § 636(b)(1). To challenge a magistrate judge's report, a party must specifically identify those findings to which she objects. *See id.* Frivolous, conclusory, or general objections need not be considered by the district judge. *Nettles v. Wainwright*, 677 F.2d 404, 410 & n.8 (5th Cir. 1982) (en banc), *overruled on other*

*grounds by Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (en banc). And objections that simply rehash or mirror the underlying claims addressed in the report are not sufficient to entitle the party to de novo review. *See Mark v. Spears*, No. 6:18-CV-309, 2022 WL 363586, at *1 (E.D. Tex. Feb. 7, 2022); *see also Nickelson v. Warden*, No. 1:11-CV-334, 2012 WL 700827, at *4 (S.D. Ohio Mar. 1, 2012) ("[O]bjections to magistrate judges' reports and recommendations are not meant to be simply a vehicle to rehash arguments set forth in the petition."); *United States v. Morales-Castro*, 947 F.Supp.2d 166, 171 (D.P.R. 2013) ("Even though timely objections to a report and recommendation entitle the objecting party to de novo review of the findings, the district court should be spared the chore of traversing ground already plowed by the Magistrate." (quotation omitted)).

## II.

Reyes claims that Equifax—a credit reporting agency ("CRA")—violated the Fair Credit Reporting Act ("FCRA") by reporting "inaccurate" information concerning her credit card account. Specifically, she argues that over $2,500 in charges incurred on her Citibank[1] account were the product of fraud, possibly from someone "skimming" her credit card. Reyes admittedly did not pay the bill for these charges, maintaining that she is not responsible for the purchases. Accordingly, Citibank reported to Equifax that Reyes had an outstanding balance. But since Reyes contests her liability for these charges, she asserts that Equifax cannot report the outstanding balance on her credit report. Reyes's argument fails.

---

[1] Citibank is a data furnisher.

To establish a claim under Section 1681e(b) and Section 1681i of the FCRA, a plaintiff must show that the credit report at issue is inaccurate. *Hurst v. Equifax Info. Servs., LLC*, No. SA-20-CV-1366, 2021 WL 5926125, at *4–5 (W.D. Tex. Dec. 15, 2021) (collecting cases). "A credit entry may be 'inaccurate' within the meaning of the statute either because it is patently incorrect, or because it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Sepulvado v. CSC Credit Servs., Inc.*, 158 F.3d 890, 895 (5th Cir. 1998). Equifax's report is neither.

As the evidence establishes, although Reyes contends she is not responsible for the approximately $2,500 in charges, Citibank "consider[s] the [disputed] transactions to be a valid portion of" Reyes's account. (Dkt. #55-3 at 2). Reyes admits that she "did not pay the [allegedly] fraudulent charges," and that, "[a]s a result, Citibank reported the Citibank Account as derogatory." (Dkt. #61 at 5–6). Thus, irrespective of whether Reyes originally incurred the charges, there is no dispute that Reyes's account had an outstanding balance, that Citibank furnished this information to Equifax, and that Equifax then included it in Reyes's credit report.[2] Therefore, the report accurately reflected the state of Reyes's account.

---

[2] Reyes contends that Citibank's letter to Equifax explaining that it considers the transactions to be valid is inadmissible hearsay. "'Hearsay' is an out-of-court statement offered to prove the truth of the matter asserted." *United States v. Piper*, 912 F.3d 847, 855 (5th Cir. 2019). In its motion for summary judgment, Equifax explains that the letter shows that Equifax understood that there was an outstanding balance. (Dkt. #55 at 22, 24, 35–36). The statement is not being offered to prove that, in fact, Reyes is responsible for the approximately $2,500 in disputed charges, as Reyes contends. Instead, Equifax offered Citibank's letter to show why it reported Reyes's unpaid balance on her credit report. *See* (Dkt. #55 at 22) ("Plaintiff has failed to produce any evidence to suggest that at the time, either during Plaintiff's dispute or now, that Citibank no longer considers the balance to be

Reyes's argument that the report is inaccurate because it contains charges that she is purportedly not legally responsible for fails for two reasons. First, Reyes cannot make the threshold showing that a report contains inaccurate information if the alleged inaccuracy is based on a not-yet-adjudicated position that the debt is not legally valid. Such an alleged inaccuracy is insufficient because "CRAs are not a tribunal sitting to resolve legal disputes." *Humphrey v. Trans Union LLC*, 759 F. App'x 484, 488 (7th Cir. 2019); *see also Denan v. Trans Union LLC*, 959 F.3d 290, 296 (7th Cir. 2020) (explaining that CRAs "are neither qualified nor obligated to resolve legal issues").[3] Several circuits have reached this conclusion, holding that a consumer's challenge to the validity of a debt "is a question for a court to resolve in a suit against the [creditor,] not a job imposed upon consumer reporting agencies by the FCRA." *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892 (9th Cir. 2010) (quoting *DeAndrade v. Trans Union LLC*, 523 F.3d 61, 68 (1st Cir. 2008)); *accord Wright v. Experian Info. Sols., Inc.*, 805 F.3d 1232, 1244 (10th Cir. 2015) ("The FCRA expects consumers to dispute the validity of a debt with the furnisher of the information or append a note to their credit report to show the claim is disputed." (citing *Carvalho*, 629 F.3d at 892)).

---

valid."). The statement is being used to prove the statement's effect on the recipient, which is not hearsay. *See United States v. Reed*, 908 F.3d 102, 120 (5th Cir. 2018).

[3] Reyes argues that her challenge to the Citibank debt presents a pure question of fact. The Court disagrees. At a minimum, Reyes's challenge to her underlying debt, i.e., that it was the result of fraud, involves the application of law to alleged fact(s). And this is precisely the type of analysis that courts have understood that CRAs are not equipped to perform. *See, e.g., Chuluunbat v. Experian Info. Sols., Inc.*, 4 F.4th 562, 568 (7th Cir. 2021) (explaining that CRAs are not capable of applying law to facts and thereby reaching "legal conclusions like courts and other tribunals do" (citing *Denan*, 959 F.3d at 295)).

Second, the FCRA itself demonstrates that furnishers are better positioned to determine the legal validity of debts, and consumers cannot collaterally attack their debts by suing CRAs. CRAs are ill-equipped to adjudicate legal disputes not only because they are not tribunals, but also because "the CRA is a third party, lacking any direct relationship with the consumer." *Carvalho*, 629 F.3d at 892; *see also Denan*, 959 F.3d at 295 (noting that, rather than acting as "tribunals," CRAs "collect consumer information supplied by furnishers, compile it into consumer reports, and provide those reports to authorized users"). When it comes to the validity of debts, a furnisher is "in a better position than the CRAs to make this determination." *Humphrey*, 759 F. App'x at 488 (citation omitted); *Carvalho*, 629 F.3d at 892 (a furnisher "stands in a far better position to make a thorough investigation of a disputed debt than the CRA" (citation omitted)).[4]

In this regard, the FCRA "imposes duties on consumer reporting agencies and furnishers in a manner consistent with their respective roles in the credit reporting market." *Denan*, 959 F.3d at 294. "Furnishers—such as banks, credit lenders, and collection agencies—provide consumer data to consumer reporting agencies." *Id*. the CRAs "compile the furnished data into a comprehensible format, allowing others to

---

[4] The Court notes that Reyes is "currently litigating her claims with Citibank in pending arbitration." (Dkt. #61 at 6 n.2). As other courts have observed, it makes sense for a consumer to dispute the validity of a debt reflected on his or her credit report with the furnisher. *See, e.g.*, *Mader v. Experian Information Solutions, Inc.*, 56 F.4th 264, 271 (2d Cir. 2023) ("Finally, we note that [the plaintiff] is not without options to resolve the dispute that forms the basis for the derogatory note on his credit report. Quite the contrary. [The plaintiff] could dispute the debt directly with [the furnisher], which knows the nature of the loan program better than anyone else and is itself under an FCRA obligation to report accurately to credit reporting agencies.").

evaluate the creditworthiness of a given consumer." *Id.* In this system, as the Seventh Circuit has explained, "[c]onsumer reporting agencies and furnishers, though interrelated, serve discrete functions: furnishers report data to incentivize the repayment of debts, while consumer reporting agencies compile and report that data for a fee." *Id.* Consistent with their role as the providers of consumer data, the FCRA places on furnishers the duty to ensure accurate consumer-credit reporting. *See* 15 U.S.C. § 1681s–2 (setting out the duties of "furnishers of information to consumer reporting agencies" "to provide accurate information" and to conduct an investigation of disputed information). "Accuracy" for furnishers, however, means information that "correctly [r]eflects . . . liability for the account." 12 C.F.R. § 1022.41(a). "Neither the FCRA nor its implementing regulations impose a comparable duty upon consumer reporting agencies, much less a duty to determine the legality of a disputed debt." *Denan*, 959 F.3d at 295.[5]

Because CRAs are ill-equipped to adjudicate legal disputes as non-tribunal third parties who do not have direct relationships with a consumer, "a consumer may not use the [FCRA] to collaterally attack the validity of a debt" by challenging a CRA's procedures. *Humphrey*, 759 F. App'x at 488; *see also Wright*, 805 F.3d at 1242 (noting that FCRA claims against CRAs "'are not the proper vehicle for collaterally attacking the legal validity of consumer debts'" (quoting *Carvalho*, 629 F.3d at 892)). That is precisely what Reyes has attempted to accomplish with this lawsuit. As the

---

[5] The FCRA does, however, impose on CRAs a 30-day action deadline for resolving consumer disputes. *See* 15 U.S.C. § 1681i(a)(1)(A). Such a limited timeframe is incompatible with any alleged duty to decide complex legal disputes over the validity of a reported debt.

6

Magistrate Judge correctly concluded, however, the FCRA does not provide a vehicle for Reyes to challenge the legal validity of her debt to Citibank by suing Equifax for accurately reporting that debt.

### III.

For these reasons, Reyes's objection, (Dkt. #84), is **OVERRULED** and the Report, (Dkt. #82), is **ADOPTED** as the opinion of the Court.

It is therefore **ORDERED** that Defendant's Motion for Summary Judgment, (Dkt. #55), is **GRANTED**. Plaintiff's claims are **DISMISSED with prejudice**.

**So ORDERED and SIGNED this 27th day of March, 2024.**

_____
SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE